In re Melvin L. **LEBOW**, Bankrupt.
**BANKERS TRUST COMPANY,**
Plaintiff,

v.

Melvin L. **LEBOW**, Defendant.

In re Herman **CARLINSKY,**
Bankrupt.
**BANKERS TRUST COMPANY,**
Plaintiff,

v.

Herman **CARLINSKY**, Defendant.

Nos. 73 B 1324, 74 B 61.

United States District Court,
S. D. New York.

July 10, 1975.

Moses & Singer, New York City, for plaintiff; Harvey A. Strickon, New York City, of counsel.

Henry & Brecker, New York City, for defendants; Martin F. Brecker, New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This matter is before us on appeal from Bankruptcy Judge Herzog's order dismissing without prejudice the complaint in these two adversary proceedings. Plaintiff Bankers Trust—a creditor of the two bankrupt-defendants—instituted these actions pursuant to Bankruptcy Rule 701(7) for a determination that an alleged contingent liability is a non-dischargeable debt. The facts, insofar as here relevant, are as follows. In April 1970, the bank loaned $200,000 to defendants in their capacity as officers of 1315 Peninsula Boulevard Corp. ("Peninsula")—the lessee of the premises located at the same address, in Hewlett, Long Island—on the basis of representations allegedly made by defendants that the proceeds of the loan would be used to improve the premises leased to Peninsula. As security for the loan, Basser, one of the owners of the premises—apparently also acting upon the basis of a belief that the loan was to be used to improve the premises—executed a fee mortgage to the bank. It now appears that rather than being used for that purpose, the proceeds were applied to the repayment of previous loans and the satisfaction of certain prior mortgages and unpaid taxes. As a result, Basser instituted suit against Bankers Trust in New York Supreme Court, charging the bank with conspiring with the bankrupt-defendants to induce Basser to execute the mortgage based on misrepresentations concerning the purpose to which the proceeds of the loan were intended to be put.

Bankers Trust, in the two complaints now before us, contends that in the event it should be found liable to Basser in the state court action, the bankrupt-defendants are contingently liable to indemnify it for any loss resulting from that hypothetical judgment. It is this

contingent "debt" that the bank now seeks to have declared non-dischargeable under the provisions of § 17a of the Bankruptcy Act, 11 U.S.C. § 35. Rather than reaching the merits of the bank's claims, Judge Herzog dismissed the complaints without prejudice, on the ground that "[a]ny decision or determination by this court at this time would be purely advisory". Since the state court action may very well result in a judgment in favor of the bank, Judge Herzog reasoned, any decision by the Bankruptcy Court as to (1) the existence or non-existence of a contingent liability on the part of the bankrupts and (2) the dischargeability or non-dischargeability of such contingent liability might be rendered moot. He concluded, therefore, that the institution of the actions was "an imposition on [the] court" and dismissed the complaints without prejudice. He ruled that, should Basser ultimately recover judgment against Bankers Trust, the bank would be protected by § 17c of the Act [11 U.S.C. § 35(c)] and Bankruptcy Rule 409, which provide for the reopening of a case for the purpose of determining the dischargeability of a debt.

Stated simply, the sole question on appeal is whether the provisions of § 17(c)(3) [1] of the Bankruptcy Act [11 U.S.C. § § 35(c)(3)] and Rule 409 [2] of the Bankruptcy Rules *require* (rather than simply empower) the Bankruptcy Judge to determine the dischargeability of all debts as to which timely applications for such determinations have been made, or whether he may, in the exercise of his discretion, defer such determination in appropriate situations. Counsel for all parties agree that this question is one of first impression.

Defendants' principal argument is that the unequivocal language of § 17(c)(3)—that an application may be filed with the Bankruptcy Court for the determination of the dischargeability of "any" debt—clearly *directs* the Bankruptcy Judge to entertain and decide on the merits *all* such applications. Plaintiff bank counters with the argument that at best, this language merely *empowers* the Bankruptcy Judge to deter-

1. § 17(c)(3):
After a hearing upon notice, the court shall determine the dischargeability of any debt for which an application for such determination has been filed, shall make such orders as are necessary to protect or effectuate a determination that any debt is dischargeable and, if any debt is determined to be nondischargeable, shall determine the remaining issues, render judgment, and make all orders necessary for the enforcement thereof. A creditor who files such application does not submit himself to the jurisdiction of the court for any purposes other than those specified in this subdivision.

2. Rule 409:
(a) Proceeding to Determine Dischargeability.
(1) Persons Entitled to File Complaint; Time for Filing in Ordinary Case. A bankrupt or any creditor may file a complaint with the court to obtain a determination of the dischargeability of any debt. Except as provided in paragraph (2) of this subdivision, the complaint may be filed at any time, and a case may be reopened without the pay-

ment of an additional filing fee for the purpose of filing a complaint under this rule.

(2) Time for Filing Complaint Under § 17c(2) of the Act; Notice of Time Fixed. The court shall make an order fixing a time for the filing of a complaint to determine the dischargeability of any debt pursuant to § 17c(2) of the Act. The time shall be not less than 30 days nor more than 90 days after the first date set for the first meeting of creditors, except that if notice of no dividend is given pursuant to Rule 203(b), the court may fix such time as early as the first date set for the first meeting of creditors. The court shall give creditors at least 30 days' notice of the time so fixed except that only 10 days' notice is required if notice of no dividend is given under Rule 203(b). Such notice shall be given to all creditors in the manner provided in Rule 203. The court may for cause, on its own initiative or on application of any party in interest, extend the time fixed under this paragraph.

mine dischargeability—it does not require him to do so in all instances.

Prior to the enactment of § 17(c)(3) in 1970, a bankrupt was at the mercy of his creditors in at least two important respects. In the first place, it was a common practice for creditors whose claims against a bankrupt had already been found dischargeable in bankruptcy, to nevertheless institute actions on such debts in state court (making appropriate allegations which would render the debt non-dischargeable), in the expectation (too often realized) that the bankrupt would ignore the proceedings based on a misplaced reliance on his discharge, or because of lack of funds to defend. This often resulted in default judgments and subsequent garnishment of the bankrupt's wages or levy of his property. In the second place, because there were no time limits set by statute within which a creditor had to seek a determination of dischargeability, the bankrupt would necessarily be subjected to an indefinite period of uncertainty and continuing potential liability.

A review of the legislative history of the 1970 amendments to § 17 satisfies me that such amendments were intended by Congress to deal only with the first mentioned abuse. While defendants contend that the intent was to bring an immediate end to the uncertainty of the possible future enforcement of debts, my conclusion is to the contrary. Rather, the only purpose behind § 17(c)(3) was to constitute the Bankruptcy Court as the sole forum for the determination of the dischargeability of debts, and there-

by to end the abuses attendant on the existence of multiple forums.

Congress' lack of intent to impose a mandatory time limit is evidenced by the provisions of Rule 409. Under these provisions, the dischargeability of certain kinds of debts [3] may be determined "at any time", while as to the remainder,[4] the specific time limits set may "for cause" be extended by the court.

In light of the above, Judge Herzog's reading of the statute as being discretionary and not mandatory was correct. Moreover, as a simple matter of judicial economy, it may be years before a final judgment will be entered in the pending state court action against Bankers Trust. Should that eventual judgment be in the bank's favor, any present determination by Judge Herzog of the bank's claims against the bankrupt-defendants would have been wholly unnecessary. If we were to hold, as a matter of law, that the Bankruptcy Court is mandated by the statute to hear and determine the dischargeability of *all* claims, no matter how contingent or unliquidated, the potential for wasted judicial activity would be enormous.[5]

All we hold today is that under the terms of the Act and the Rules, although applications for the determination of dischargeability may be *filed* as to any debts, the Bankruptcy Judge may, in the exercise of his discretion, elect to defer consideration of certain applications in the appropriate circumstances.

Order of Judge Herzog affirmed.

---

3. Those described in § 17(a)(1), (3), (5), (6) and (7).

4. Those described in § 17a(2), (4) and (8).

5. There is dispute between the parties as to whether this particular case, if the merits were to be reached, would occupy a few hours or a few weeks of the Bankruptcy

Judge's time. The resolution of such dispute is not necessary. The mandatory rule for which plaintiff contends would obviously result in situations where a Bankruptcy Court might be required to spend weeks—or even months—conducting litigation which might ultimately become moot.